IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERNESTO LOPEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. _____ |
| | § | |
| ACME BRICK COMPANY, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Ernesto Lopez ("Plaintiff" or "Mr. Lopez"), files his Original Complaint, complaining of Defendant Acme Brick Company ("Acme," "Defendant," or "the Company").

**SUMMARY**

1. For more than twenty-two years, Mr. Lopez faithfully devoted his working life to Acme. About ten years ago, a maniacal coworker began to threaten and terrorize Mr. Lopez and his family. Mr. Lopez obtained a restraining order against the crazed coworker, and gave it to Acme. Acme did nothing to enforce it, or to protect Mr. Lopez at work. As a result, the bullying coworker became more emboldened, and eventually physically attacked and brutally beat Mr. Lopez – who was 59-years old at the time – at work. Acme failed to file a timely workers' compensation claim, and instead quickly fired Mr. Lopez, and then falsely told the Texas Workforce Commission ("TWC") that Mr. Lopez admitted that he "initiated" the fight and threw a knife or box cutter at the coworker (TWC Transcript, Ex. E-1 at 24, 30). The TWC saw through Acme's pretextual, double-victimization attack on Mr. Lopez, and awarded Mr. Lopez unemployment benefits (TWC Determination, Ex. F). Mr. Lopez now brings this wrongful termination lawsuit against Acme for age, national original, and race discrimination, as well as workers' compensation retaliation.

## THE PARTIES, JURISDICTION, AND VENUE

2. The Plaintiff, Mr. Lopez, is a natural person residing in Sealy, Texas. Mr. Lopez has standing to file this lawsuit.

3. The Defendant, Acme, is a corporation that is incorporated under the laws of the State of Texas and headquartered at 3024 Acme Brick Plaza, Fort Worth, Texas 76109.

4. Acme may be served with process through its registered agent, Judy Hunter, at 3024 Acme Brick Plaza Fort Worth, Texas 76109.

5. Personal jurisdiction is proper because Acme has continuous and systematic contacts with and in the State of Texas, and the events or omissions giving rise to the Plaintiff's claims occurred in the State of Texas.

6. Subject matter jurisdiction is proper because Mr. Lopez brings a claim under a federal law, 42 U.S.C. § 1981, and the district court has supplemental jurisdiction over Mr. Lopez's Texas state law claims.

7. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in the Southern District of Texas, the unlawful employment practices alleged in this case occurred in the Southern District of Texas, and there are employment records relevant to Mr. Lopez's claims maintained and administered by Acme in this district.

## FACTUAL BACKGROUND

8. Mr. Lopez began working for Acme on or about March 19, 1992, as a Kiln Car Repairman (TWC Transcript, Ex. E-1 at 21, 23). Mr. Lopez worked for Acme for more than 22 years, at Acme's San Felipe manufacturing facility located in Sealy, Texas. Mr. Lopez's English language fluency is not superb, but his performance was. He performed multiple tasks, including repair work, welding, and operating a forklift. He earned $18.94 an hour (*Id*. at 22-23). Mr.

Lopez was a model employee. During his entire 22+ years of employment, Mr. Lopez never received any disciplinary write-ups. In February 2000, he received the "Acme Brick San Felipe Plant Employee of the Month" Award.

9. Approximately 10 years ago a notoriously unstable and violent coworker named Albino Salinas hit Mr. Lopez's minivan in the Acme parking lot. Salinas did not have insurance, so he was required to pay for the damage to Mr. Lopez's minivan out of his own pocket. This apparently angered Salinas, and he began a campaign of terror and threatened violence against Mr. Lopez. For example, Salinas repeatedly threatened to kill Mr. Lopez and his family, and to "cut off" Mr. Lopez's head with machine gun fire. Salinas made those threats at work, in front of other Acme employees.

10. Mr. Lopez was fearful of Salinas. Mr. Lopez responded to Salinas's campaign of terror and threats by seeking and obtaining a restraining order against Salinas. Mr. Lopez gave Acme a copy of the restraining order. Acme did nothing to ensure it was enforced, or that Mr. Lopez was protected from Salinas. To the contrary, Acme permitted Salinas to continue to harass, threaten, and terrorize Mr. Lopez at work, even after Mr. Lopez complained to, among others, his supervisor, Barry Lowe, and the Safety Manager, Aaron Schramm. Acme management demonstrated no concern for Mr. Lopez or his safety. The way they treated him indicated that, because he is a Hispanic, Mexican-American, they did not value him as much as if he were white. Salinas, in turn, apparently took Acme's inaction as an implicit endorsement of his terrorization of Mr. Lopez.

11. Eventually, Salinas became so emboldened by Acme's inaction and implicit approval of his behavior that, on July 2, 2014, he physically attacked Mr. Lopez (TWC Transcript, Ex. E-2 at 38, 40). Mr. Lopez is approximately 5'4" tall, of slight build, and weighs

about 150 pounds. He was 59 years old at the time of this incident. In contrast, Salinas is a younger, muscular, man of approximately 190 pounds. Salinas head butted Mr. Lopez, threw him to the ground, beat him, slammed his head against the floor, and attempted to gouge out his left eye (*Id*. at 38, 40). A coworker named Jonas Brooks was nearby, and was able to pull Salinas off Mr. Lopez as Salinas was still beating him (*Id*. at 31, 33).

12. Immediately after the attack, Mr. Lopez told the Plant Manager, Allen Thacker, and the Safety Manager, Mr. Schramm, what had happened. At that point, Mr. Lopez was suspended and told to report back to Acme on July 7, 2014. Neither Mr. Thacker nor Mr. Schramm:

    a. Offered Mr. Lopez any medical attention even though he was in need of it – indeed, no one at Acme did.

    b. Offered Mr. Lopez any assistance in contacting law enforcement personnel to report Mr. Salinas's assault – indeed, no one at Acme did.

    c. Offered to file a First Report of Injury or Illness with the Texas Workers' Compensation Commission or Acme's insurance carrier – indeed, no one at Acme did at the time.

13. With no medical or legal assistance forthcoming from Acme, later that day Mr. Lopez went to Katy Memorial Herman Hospital (where he was diagnosed with severe bruising, head trauma, and eye damage) and the Sealy Police Department (TWC Transcript, Ex. E-2 at 41). As a result of Mr. Lopez's report, Salinas was justifiably arrested and thrown in jail. Mr. Lopez's daughter, Helen, took pictures of Mr. Lopez at the hospital, which are attached as Exhibits A and B.

14. Mr. Thacker decided to fire Mr. Lopez on July 2, 2014 – the very day of the incident – even though, by his own written admission, he had not even obtained any witness statements yet (Thacker E-mail, Ex. C).

15. On July 3, 2014, after learning of Salinas's attack on Mr. Lopez, the Austin County District Attorney's Office filed criminal assault charges against Mr. Salinas (Ex. D).

16. On July 7, 2014, as instructed, Mr. Lopez returned to Acme, but no one was there to tell him of his fate. So, he returned the next day, July 8, 2014. At that time, Mr. Thacker told Mr. Lopez that he was fired after more than 22 years for violating the Company's "Zero Tolerance" policy against violence in the workplace. This is a ridiculous and defamatory lie. Mr. Lopez was shocked, heartbroken, and devastated. He has suffered from depression, anxiety, and headaches since his termination. Barry Lowe and Gilbert Nieto subsequently told Mr. Lopez that he was replaced by a younger white male.

17. In August 2014, Mr. Lopez retained Oberti Sullivan LLP to represent him, and Oberti Sullivan LLP sent Acme's General Counsel, William Latham, a letter setting out Mr. Lopez's claims. Mr. Latham never wrote back or responded to the letter. But, shortly after it received that letter, Acme contested Mr. Lopez's claim for unemployment benefits to the TWC, claiming he had been terminated for "misconduct." Two sworn hearings were held (one on September 15, 2014 and another on October 6, 2014) (TWC Transcripts, Exs. E-1 and E-2) with the TWC. In an aggressive, all out effort to convince the TWC that Mr. Lopez had been terminated for misconduct, Acme presented testimony from numerous individuals, including Allen Thacker, Barry Lowe, Jesus Avila, Jonas Brooks, and even its own General Counsel, William Latham (TWC Transcripts, Exs. E-1 and E-2).

18. During the unemployment claim hearings, Acme repeatedly lied to the TWC, for example falsely alleging that it fired Mr. Lopez because he "initiated" the fight with Mr. Salinas, and threw a knife or box cutter at Mr. Salinas (TWC Transcript, Ex. E-1 at 24, 30). Acme even falsely claimed that Mr. Lopez "admitted" to initiating the fight with Ms. Salinas (*Id*. at 32).

19. The TWC saw through Acme's lies. After the two hearings, the TWC correctly concluded that Mr. Lopez had not committed any act of misconduct, and awarded him benefits (TWC Determination, Ex. F). That is not surprising, given that Acme's own employee-witnesses, Jesus Avila and Jonas Brooks, did not back up its ridiculous claims that Mr. Lopez "initiated" the fight and threw a knife or box cutter at Mr. Salinas (TWC Transcript, Ex. E-2 at 13, 32).

20. Acme continued its over-aggressive assault on Mr. Lopez, and filed an appeal of the TWC's decision to the Commission itself. Acme's appeal failed. In February 2015, the Commission affirmed the decision in full (TWC Final Decision, Ex. G).

21. Upon information and belief, the Austin County public officials at one point decided not to pursue prosecution of Salinas because Acme falsely told them that Mr. Lopez and Mr. Salinas were equally fighting and at fault (Lopez Aff., Ex. H). Upon information and belief, Acme thus submitted false evidence to Austin County governmental officials in an attempt to interfere with and/or influence an official governmental investigation. After Acme's false statements were rebutted, the Austin County District Attorney's Office notified Salinas in writing that "[c]riminal charges of Terroristic Threat and Harassment are being considered against you." (Letter from Travis J. Koehn to Albino Salinas of 12/01/14, Ex. I).

## CLAIMS

### A. National Origin And Age Discrimination Claims Under The TCHRA, And Race Discrimination Under 42 U.S.C. § 1981

22. National origin and age discrimination in employment are prohibited by the Texas Commission on Human Rights Act ("TCHRA"), TEX LAB. CODE ANN. § 21.001 *et seq*. The TCHRA is interpreted consistently with the Age Discrimination in Employment Act ("ADEA") and Title VII, 42 U.S.C. § 2000*e et seq*. because the Texas legislature intended to correlate state

law with federal law in employment discrimination cases. *See NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999).

23. 42 U.S.C. § 1981 prohibits race discrimination. Mr. Lopez is of Mexican ancestry. It is well established that discrimination against one based on their Mexican ethnicity, background, or heritage is considered race discrimination under 42 U.S.C. § 1981. *See St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613, 107 S. Ct. 2022 (1987); *Alvarado v. Shipley Donut Flour & Supply Co., Inc.*, 526 F. Supp. 2d 746, 754 (S.D. Tex. 2007).

24. A plaintiff can demonstrate national origin, age, or race discrimination through direct evidence or by an indirect or inferential [circumstantial] method of proof. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). To qualify as direct evidence of discrimination, a statement must be: (1) related to the protected category; (2) proximate in time to the termination; (3) made by an individual with authority over the termination; and (4) related to the employment decision. *See Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003).

25. The circumstantial model is governed by the well-known burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under the circumstantial model, to establish a *prima facie* case of national origin, age, or race discrimination based on circumstantial evidence, a plaintiff must show that: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his national origin or age. *Rachid*, 376 F.3d at 309. The burden to establish a *prima facie* case of discrimination is not an "onerous" one. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012). Under this

framework, "a plaintiff is entitled to a presumption of discrimination if he can meet the minimal initial burden of establishing a *prima facie* case." *Id*. In addition, in work-rule violation cases, a discrimination plaintiff may alternatively establish a *prima facie* case by showing "either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly." *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir.), *cert. denied*, 449 U.S. 879, 101 S. Ct. 227 (1980).

26. If the plaintiff makes out a *prima facie* case, the burden of production then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the challenged employment action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S. Ct. 2742, 2747 (1993); *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006). If the defendant meets its burden, the presumption raised by the plaintiff's *prima facie* case disappears. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 10 (1981). The plaintiff is then given the opportunity to demonstrate that the defendant's articulated rationale was merely a pretext for discrimination. *See Hicks*, 509 U.S. at 507-08, 113 S. Ct. 2742; *Burdine*, 450 U.S. at 253, 101 S. Ct. 1089; *Machinchick v. PB Power, Inc.*, 398 F.3d 345 (5th Cir. 2005); *see also McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 461 (5th Cir. 2005) (TCHRA case).

27. Regarding the standard of causation, under the TCHRA, the burden falls to the employee only to produce evidence that his or her national origin or age was a "motivating factor" in his termination. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473 (Tex. 2001) (motivating factor is the standard of causation under the TCHRA); *see also Jackson v. Host Intern., Inc.*, Nos. 09–51137, 10–50026, 2011 WL 2119644, at *12 n. 2 (5th Cir. Feb. 1, 2011) (noting difference in causation standards between ADEA claims and claims under the TCHRA,

and holding that the "motivating factor" standard is the correct standard of causation under the TCHRA, even post-*Gross*).

28. In "motivating factor" cases, such as claims under the TCHRA, a modified *McDonnell Douglas* approach in discrimination cases under Title VII. As described by the Fifth Circuit, under that approach, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (a) the employer's reason is a pretext (*see supra*) or (b) that the employer's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (stating that if the employer sustains its burden, the *prima facie* case dissolves, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). The TCHRA's "motivating factor" standard is thus different than the ADEA's "but for" standard. *See, e.g.*, *Peterson v. Bell Helicopter Textron, Inc.,* 901 F. Supp. 2d 846, 859 (N.D. Tex. 2012) (granting summary judgment against the plaintiff's ADEA claim, but denying summary judgment against his TCHRA age discrimination claim based on the exact same evidence, because "the causation element of Peterson's rebuttal arguments to Bell's legitimate, nondiscriminatory reason is less stringent [under the TCHRA than the ADEA."]).

29. In this case, Mr. Lopez easily makes out a *prima facie* case of national origin, age, and race discrimination (this is so for a number of reasons, including but not limited to the fact that he was replaced by a younger white male and the fact that he did not violate any work rule

when he was attacked by Salinas, or at any other time), and has evidence of pretext. Indeed, Acme's articulated reason for Mr. Lopez's termination cannot survive a pretext analysis. Acme repeatedly lied to the TWC about why it fired Ms. Lopez, for example falsely alleging that Mr. Lopez was fired because he "initiated" the fight with Salinas and threw a knife or box cutter at Mr. Salinas (TWC Transcript, Ex. E-1 at 24, 30). Acme made the "knife or box cutter throwing" allegation even though its own employee-witnesses, Jesus Avila and Jonas Brooks, did not back up that ridiculous claim (TWC Transcript, Ex. E-2 at 13, 32). Acme even falsely claimed that Mr. Lopez "admitted" to initiating the fight with Salinas (*Id*. at 32). In truth, Mr. Lopez did not initiate a fight with Salinas, did not throw a knife or box cutter at him, and did not admit to initiating a fight with Salinas. Neither did Mr. Lopez violate the Company's policy against workplace violence. To the contrary, he was a victim of violence, not its perpetrator (*Id*. at 38). Acme knew this, but lied about Mr. Lopez anyway. This wide gap between Acme's given reason for termination, and the actual truth, is alone sufficient evidence of pretext to get to a jury on his discrimination claims under the TCHRA and 42 U.S.C. § 1981. *See, e.g., Haire v. Board of Sup'rs of La. State Univ. Agricultural and Mech. Coll*., 719 F.3d 356, 365 n. 10 (5th Cir. 2013) (reversing summary judgment for the employer in a sex discrimination case, and holding that, "[e]vidence demonstrating that the employer's explanation is false or unworthy of credence . . . is likely to support an inference of discrimination even without further evidence of defendant's true motive.") (emphasis in original); *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637-39 (5th Cir. 2011) (reversing summary judgment for the employer in a discrimination case because the plaintiff's evidence would permit a reasonable jury to conclude that the employer's given reason for her termination lacked credence, and was thus pretextual); *Rachid*, 376 F.3d at 314 (fact issue over whether ADEA plaintiff actually violated company policy supported the

appeals court's decision to reverse the summary judgment that had been entered for the employer and remand the case for trial); *see also Machinchick v. PB Power, Inc.*, 398 F.3d 345 (5th Cir. 2005) (reversing a summary judgment in an ADEA case where employer had treated younger employees more favorably); *Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 578 (5th Cir. 2002) (reversing a summary judgment in a Title VII discrimination case where employee in non-protected class allegedly committed an offense of same policy that was just as bad, if not worse, than plaintiff did, and was not fired).

**B.      Workers' Compensation Retaliation Under Section 451.001**

30.      The Texas Workers' Compensation Act was enacted to protect Texas workers and employees. *Fid. & Cas. Co. of N.Y. v. McLaughlin*, 134 Tex. 613, 135 S.W.2d 955, 956 (1940). The Texas Legislature enacted the original Workers' Compensation Act in 1913 in response to the needs of workers who, despite a growing incidence of industrial accidents, were increasingly being denied recovery. *Kroger Co. v. Keng*, 23 S.W.3d 347, 350 (Tex. 2000); *Tex. Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 510 (Tex. 1995). In order to ensure compensation for injured employees while protecting employers from the costs of litigation, the Legislature provided a mechanism by which workers could recover from subscribing employers without regard to the workers' own negligence, *see Kroger*, 23 S.W.3d at 351, while limiting the employers' exposure to uncertain, possibly high damage awards permitted under the common law, *see Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 407 (Tex. 1985). In light of the purposes of the Workers' Compensation Act as a whole, "[i]t is the settled policy of this State to construe liberally the provisions of the . . . [l]aw, in order to effectuate the purposes for which it was enacted." *Huffman v. S. Underwriters*, 133 Tex. 354, 128 S.W.2d 4, 6 (1939) (citations omitted). As the Texas Supreme Court noted, "[b]ecause we should liberally construe the Workers'

Compensation Act in favor of the injured worker, a strained or narrow construction of [the Act] would be improper. Moreover, it would be injudicious to construe the statute in a manner that supplies by implication restrictions on an employee's rights that are not found in . . . [the] plain language." *Kroger*, 23 S.W.3d at 349.

31. Section 451.001 of the Texas Labor Code provides: "A person may not discharge or in any other manner discriminate against an employee because the employee has: filed a workers' compensation claim in good faith," or otherwise participated in a workers' compensation claim or suit in specified ways. TEX. LAB. CODE ANN. § 451.001 (Vernon 2006). Section 451.001 is a statutory exception to the Texas common-law doctrine of employment-at-will. *Lozoya v. Air Systems Components, Inc.*, 81 S.W.3d 344, 347 (Tex. App.–El Paso 2002, no pet.); *Jenkins v. Guardian Industries Corp.*, 16 S.W.3d 431, 435 (Tex. App.–Waco 2000, pet. denied). The purpose of this statute is to protect persons entitled to benefits under the Workers' Compensation Act and to prevent them from being discharged for filing claims to collect those benefits. *Trico Technologies Corp. v. Montiel*, 949 S.W.2d 308, 312 (Tex. 1997); *Lozoya*, 81 S.W.3d at 347. Thus, the section has both remedial and deterrence objectives. *Lozoya*, 81 S.W.3d at 347.

32. In accordance with these principles, the Texas Supreme Court has held that the anti-retaliation provisions of the Act must protect employees even before they have actually filed a claim, because otherwise "the law would be completely useless and would not accomplish the purpose for which it was enacted. . . . [A]ll the employer would have to do in order to avoid the consequences of the statute would be to fire the injured workman before he filed the claim." *In re Poly-America, L.P.*, 262 S.W.3d 337 (Tex. 2008) (citing *Tex. Steel Co. v. Douglas*, 533 S.W.2d 111, 115 (Tex. Civ. App.–Fort Worth 1976, writ ref'd n.r.e.)).

33. Circumstantial evidence sufficient to establish a causal link between termination and filing a compensation claim (or being injured at work) includes: (1) knowledge of the compensation claim (or on-the-job injury) by those making the decision to terminate; (2) a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment of the injured employee in comparison to similarly situated employees; and (5) providing incentives to refrain from reporting on-the-job injuries. *See Lozoya*, 81 S.W.3d at 347–48; *Wyler Industrial Works, Inc. v. Garcia*, 999 S.W.2d 494, 501 (Tex. App.–El Paso 1999, no pet.).

34. In this case, Mr. Lopez suffered an on the job injury on July 2, 2014. Acme did not timely file a First Report of Injury or Illness with the Texas Workers' Compensation Commission or Acme's insurance carrier. Acme showed extreme hostility toward Mr. Lopez's injured condition, and fired him six days after the injury, on July 8, 2014. Mr. Lopez can prove a case of workers' compensation retaliation under these egregious circumstances. *See, e.g., Hertz Equipment Rental Corp. v. Barousse*, 365 S.W.3d 46, 56 (Tex. App.–Houston [1st Dist.] 2011, pet. denied) (relying on other evidence in affirming a $665,000.00 total compensatory damages award to the plaintiff in a workers' compensation retaliation case); *Glass v. Amber*, 2002 WL 31430097 (Tex. App.–Houston [1st Dist.] Oct 31, 2002, pet. denied) (finding for plaintiff where employer did not file first report of injury or illness); *Wal-Mart Stores, Inc. v. Holland*, 956 S.W.2d 590 (Tex. App.–Tyler July 31, 1997), *partially reversed on other grounds*, 1 S.W.3d 91 (Tex. 1999) (same).

## DAMAGES

35. The damages in this case for the national origin, age, and race discrimination Mr. Lopez suffered consist of back-pay, front-pay, compensatory damages, punitive damages,

reasonable attorneys' fees, and costs.  Each component is explained below.  In addition, as explained below, Mr. Lopez is entitled to a tax offset payment.

36. Mr. Lopez is entitled to back-pay, which compensates him for his loss in pay and benefits between the date of his termination and the time of trial.  It is a sad but incontrovertible fact that older workers like Mr. Lopez have great difficulty finding substantially equivalent positions.  *See, e.g.*, http://knowledge.wharton.upenn.edu /article.cfm?articleid=2577 (Interview in September 2010 with Peter Cappelli, director of Wharton's Center for Human Resources, in which he states: "If you look at the research on older workers, you see an incredible amount of discrimination against them, bigger than race, bigger than gender.  Older workers struggle to get hired.").  The back-pay award includes the costs of uncovered medical treatments, or payments for replacement insurance.  *See Pearce v. Carrier Corp.*, 966 F.2d 958, 959 (5th Cir. 1992); *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 179 (5th Cir. 1992).

37. Mr. Lopez is also entitled to a front-pay award.  The Fifth Circuit affirmed a five-year award on behalf of an older plaintiff in a TCHRA discrimination case in 2011, and a ten-year front-pay award in a retaliation case in 2001.  *See Jackson v. Host Intern., Inc.*, Nos. 09–51137, 10–50026, 2011 WL 2119644, at *7-8 (5th Cir. Feb. 1, 2011) (affirming five-year front-pay award); *Mota v. University of Texas Houston Health Science Center*, 261 F.3d 512, 527 (5th Cir. 2001) (affirming ten year front-pay award).  Other courts have also granted front-pay awards of ten years or more in appropriate circumstances.  *See, e.g., Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Local No. 101*, 3 F.3d 281, 286 (8th Cir. 1993) (holding that a ten-year front-pay award did not constitute an abuse of discretion); *see also Donlin v. Philips Lighting North Am. Corp.*, 581 F.3d 73, 88 (3rd Cir. 2009) (holding that district court did not abuse its discretion in awarding plaintiff front-pay for ten years); *Meacham v. Knolls Atomic*

*Power Lab.*, 381 F.3d 56, 79 (2d Cir. 2004) (affirming front-pay awards of nine to twelve and one-half years), *vacated on other grounds sub nom KAPL, Inc. v. Meacham*, 544 U.S. 957 (2005); *Gotthardt v. National R.R. Passenger Corp.*, 191 F.3d 1148 (9th Cir. 1999) (affirming an eleven-year front-pay award); *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 574 (7th Cir. 1995) (holding that ten-year front-pay award did not constitute an abuse of discretion).

38. Mr. Lopez is also entitled to compensatory damages under the TCHRA and 42 U.S.C. § 1981 for, *inter alia*, "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." TEX LAB. CODE ANN. § 21.2585 (d). As one would reasonably foresee, being illegally and unfairly fired after twenty-two years of loyal service to Acme has been an emotionally devastating experience. Mr. Lopez has suffered insomnia, anxiety, depression, repeated headaches, and other mental and physical maladies because of Acme's unlawful termination. *See, e.g., Jackson*, 2011 WL 2119644, at *8-9 (affirming $300,000.00 compensatory damages award in a TCHRA age-discrimination case); *Giles v. General Electric Co.*, 245 F.3d 474, 489 (5th Cir. 2001) (awarding $150,000.00 compensatory damages award in employment discrimination case).

39. Claimants under the TCHRA are also entitled to punitive damages where a violation is shown to have been made with reckless disregard or malice – as it clearly was here. TEX LAB. CODE ANN. § 21.2585; *see e.g., Quality Dialysis, Inc. v. Adams*, NO. 13-05-086-CV, 2006 WL 1553353, at *11 (Tex. App.–Corpus Christi June 8, 2006, no pet.) (affirming jury's award of punitive damages against employer in a discrimination case). Similarly, prevailing plaintiffs under 42 U.S.C. § 1981 may also obtain punitive damages where a violation is shown to have been made with reckless disregard or malice – as it clearly was here. *See, e.g., Abner v. Kansas City Southern Railroad Co.*, 513 F.3d 154, 160 (5th Cir. 2008).

40. Reasonable attorneys' fees are recoverable to prevailing plaintiffs under Section 21.259 of the TCHRA and under 42 U.S.C. § 1981. *See, e.g., Miller v. Raytheon Co.*, 716 F.3d 138, 149 (5th Cir. 2013) (affirming an award of attorneys' fees of $488,437.08 to the plaintiff in a single-plaintiff TCHRA discrimination case); *Lewallen v. City of Beaumont*, 394 Fed. Appx. 38, 46 (5th Cir. 2010) (affirming an award of attorneys' fees of $428,421.75 to the plaintiff in a single-plaintiff failure to promote case); *Mota*, 261 F.3d at 527-28 (affirming an attorneys' fees award of more than $300,000.00 in a retaliation and sexual harassment case); *Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d 777, 789 (S.D. Tex. 2007) (awarding prevailing plaintiff in a single-plaintiff age discrimination case $336,010.50 in attorneys' fees). Finally, costs are recoverable to prevailing plaintiffs under Section 21.259 of the TCHRA and under 42 U.S.C. § 1981.

41. All considered, Mr. Lopez's claims for national original, age, and race discrimination justify a damages award in the mid to high six-figures. *See Miller v. Raytheon Co.*, NO. 3:09-CV-440-O, 2013 WL 6838302, at *15 (N.D. Tex. Dec. 27, 2013) (on remand after appeal entering final judgment in a single-plaintiff discrimination claimant's favor of just shy of $2 million); *see also Jackson*, 2011 WL 2119644, at *1 (affirming total damages award of damages award of $1,157,500.00 in a TCHRA discrimination case); *Trickey v. Kaman Indus. Technologies Corp.*, 705 F.3d 788 (8th Cir. 2013) (affirming a jury's award of more than $800,000.00 in a discrimination case); *Dell, Inc. v. Wise*, 424 S.W.3d 100, 103 (Tex. App.–Eastland 2013, no pet.) (affirming a jury verdict of $668,019, plus attorneys' fees of $221,000, for a total award of $889,019.00 in a discrimination case brought under the TCHRA).

42. In addition, in its equitable power, the court could, and should, award Mr. Lopez an additional sum to offset the additional taxes he would have to pay on a lump sum damages

award, due to the fact of receiving it all in one tax year, as opposed to over multiple tax years. Therefore, Mr. Lopez would be unable to allot his damages award over a multiple–year period for tax purposes. The result is that Mr. Lopez will be placed into a higher tax bracket than he otherwise would have been. A tax offset would simply restore Mr. Lopez to the position he would have been in but for his wrongful termination from Acme. *See, e.g., E.E.O.C. v. RadioShack Corp.*, No. 10–CV–02365–LTB–BNB, 2012 WL 6090283 (D. Colo. Dec. 6, 2012) (awarding a tax offset in a single plaintiff age discrimination case). Income averaging was eliminated from the tax code as of the Tax Reform Act of 1986, 26 U.S.C. § 1305 (repealed 1986).

43. Similar damages as those described above would be available based on Mr. Lopez's workers' compensation retaliation claim.

## **EXHAUSTION**

44. In order to comply with the exhaustion requirement under the TCHRA, a claimant must: (1) file a complaint with the Texas Workforce Commission – Civil Rights Division ("TWC-CRD") within 180 days of the alleged discriminatory act; (2) allow the TWC-CRD to dismiss the complaint or resolve the complaint within 180 days before filing suit; and (3) file suit no later than two years after the complaint is filed. *Rice v. Russell-Stanley, L.P.*, 131 S.W.3d 510, 513 (Tex. App.–Waco 2004, pet. denied); TEX LAB. CODE ANN. §§ 21.201-.202, 21.208 (Vernon 2006). Thus, a plaintiff need not actually obtain a right-to-sue letter in order to exhaust his or her administrative remedies; he or she need only be entitled to one. "Texas courts hold that it is the entitlement to a right-to-sue letter rather than the receipt of the letter that exhausts the complainant's administrative remedies." *Wooten v. Federal Exp. Corp.*, No. 3:04–CV–1196–D, 2007 WL 63609, at *8 n. 14 (N.D. Tex. Jan. 9, 2007) (citing *Rice v*, 131 S.W.3d at 513), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009). In other words, "the right-to-sue letter is not

part of the exhaustion requirement, only notice of exhaustion [is required]." *Rice*, 131 S.W.3d at 513.

45.   Based on the foregoing legal standards, Plaintiff has satisfied all the requirements to exhaust his administrative remedies and bring this lawsuit under the TCHRA. This is so because: (1) Mr. Lopez filed a complaint with the TWC-CRD well within 180 days of his termination; (2) since filing the complaint with the TWC-CRD, he has allowed the TWC-CRD 180 days to dismiss or resolve the complaint, and it has done neither; and (3) less than two years have passed since Mr. Lopez filed his complaint with the TWC-CRD.

## JURY DEMAND

46.   Mr. Lopez demands a jury trial.

## PRAYER

Mr. Lopez asks that the court issue citation for Defendant Acme to appear and answer, and that Plaintiff be awarded a judgment against Defendant Acme for the following:

- a. Actual damages including by not limited to pecuniary losses, non-pecuniary losses, back-pay, front-pay (or reinstatement), and compensatory damages;
- b. Punitive damages under the TCHRA, 42 U.S.C. § 1981, and Section 451.001 of the Texas Labor Code;
- c. Prejudgment and post-judgment interest;
- d. A tax offset, as described above;
- e. Attorneys' fees;
- f. Court costs; and
- g. All other relief to which Plaintiff is entitled.

Respectfully submitted,

OBERTI SULLIVAN LLP

By: s/ Mark J. Oberti
Mark J. Oberti
State Bar No. 00789951
S.D. Texas No. 17918
723 Main Street, Suite 340
Houston, TX 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile
mark@osattorneys.com – Email
ed@osattorneys.com – Email

Attorney-In-Charge for Plaintiff

OF COUNSEL:

Edwin Sullivan
State Bar No. 24003024
S.D. Texas No. 24524
OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, TX 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile

Attorneys for Plaintiff